IN RE BALBÁS.

Contempt Proceeding.

No. 3.—Decided February 17, 1910.

CONTEMPT—CRITICISM OF JUDICIAL DECISION—LIBERTY OF THE PRESS.—Newspapers unquestionably have a right to censure the public acts of officials and officers as well as to criticise and reasonably discuss the decisions of any court of justice, no matter how high the court may be, after the trial or proceeding has been terminated; but in doing so, they must not violate the penal laws to which any other citizen, having the free use of sound mental faculties, is subject.

ID.—CARICATURE—DOGGEREL—TRIAL PENDING.—The court held that the evidence introduced at the trial and the doggerel and caricature constituting the contempt referred to the disbarment proceedings then being conducted before the

Supreme Court against Herminio Díaz Navarro, and that he and no one else is the person who appears in the caricature as being hanged.

Id.—Signification of the Caricature—Intention of the Journalist.—The court also considered that if the drawing referred to had any signification it must mean that this court decided the matter before hearing the evidence and before the proceeding was terminated, because it depicted the respondent, Díaz Navarro, as already condemned without any further proceeding; and this is corroborated by the doggerel, an unprejudiced reading of which reveals the fact that such was the intention of the editor, manifested by the circumstances connected with the crime and a sound judgment and discretion therein.

Id.—Acts Constituting Contempt.—This court decided that both the doggerel and the caricature taken together constitute a contempt of this Supreme Court, because they contain defamatory, malicious and false imputations, graphically set forth in a newspaper of general circulation, thereby tending unjustly to discredit this court.

Id.—Gravity of Offense—Effect of Publication.—The gravity of the offense committed is manifest, because it tends to create a lack of confidence in the public mind, by leading the people to believe that the court before which proceedings for the disbarment of Herminio Díaz Navarro were being conducted, would not proceed impartially and with integrity.

The facts are stated in the opinion.

*Mr. Jesús M. Rossy, fiscal,* for complainant.

*Mr. Eugenio Benítez Castaño* for defendant.

The *fiscal* of the Supreme Court has filed an information herein against Vicente Balbás Capó charging him with the crime of contempt of this court committed in the following manner:

"First. That Vicente Balbás Capó is the editor of a newspaper issued and published in the city of San Juan, Island of Porto Rico, under the name of 'Heraldo Español.'

"Second. That during the public sessions of this honorable court, in connection with the disbarment proceedings brought against Attorney Herminio Díaz Navarro, and before the case had been decided by the court, the said Vicente Balbás Capó published and caused to be circulated, in No. 16 of said newspaper, the 'Heraldo Español,' for January 20, 1910, on the first page thereof, under the title of 'Actualidad Gráfica,' a caricature which referred to the proceedings being held in this honorable court, in which the defendant in said proceedings was represented by means of a drawing or picture hanging by a rope, the other end of which was in the hands of another person, also represented by means of another drawing or picture.

"That the said Vicente Balbás Capó likewise, at the left of said caricature, within the space intended therefor in the aforementioned

newspaper, wrote, published, and placed in circulation, under the
title of 'Popular Couplets,' the following doggerel:

*Translation.*

POPULAR COUPLETS.

"The accused is hanging above,
    The accuser below is he.
Is the day very far distant
    When the contrary shall be?

"When in the court I observe
    In black gowns the lawyer gang,
It seems to me that I'm seeing
    Cassocks of those doomed to hang.

"At sight of him who accuses,
    With the accused so hard indeed,
I cry: 'What things in the world
    A man can do for his "feed"!'

"The accuser, why does he smile
    With such rapturous effusion,
When examining the witnesses
    Brought in by the prosecution?

"Whene'er I challenge a judge
    It is because, with alarm,
I see that the judge I challenge
    Is bent upon doing harm.

"Do not tell me that the hangman
    Should be, as hateful, berated;
For the man who pulls the rope
    Is no hangman, but is hated.

"At the railing of the jail
    Messages for me don't bear
From the man who did accuse me,
    For I shall forgive him ne'er.

"Of two hangmen who together
    Sitting on the bench I view,
The one who's talking is hateful,
    T'other is repellant, too.

"When on the prisoner's stool
A man being accused I see,
I ask myself if the accuser
From sin has himself been free."

The *fiscal* applied to this court for the issue of an order to Vicente Balbás Capó to appear and show cause why he should not be adjudged in contempt, which prayer was granted on February 1 of the current year, the order having issued on the same date.

The said hearing took place in this court on the 14th instant, the defendant appearing with his counsel, Eugenio Benítez Castaño, while the Attorney General's office was represented by the *fiscal* of this court, Vicente Balbás Capó alleging that there was no reason whatsoever to adjudge him in contempt, because he had not the remotest intention of referring either in the caricature or in the doggerel, in the section of the newspaper entitled "Actualidad gráfica" to the matter of Herminio Díaz Navarro, at that time pending before this high court, but he had referred to proceedings which were being prosecuted in Mayagüez against Father Pedro Dietrich; and for this purpose he had ordered the caricature which he had not seen until after the newspaper was in circulation, and that the doggerel related to nothing but general ideas on human justice and that their purpose had never been either to disturb or offend this Supreme Court, for which he has the highest respect and consideration, and holds each of the justices thereof in the highest esteem.

The newspaper presented by the *fiscal* was admitted in evidence and a number of witnesses presented by both parties testified, the testimony of Libertad Torres Grau being particularly worthy of note to the effect that he had acted as *fiscal* in Mayagüez in the proceedings against Father Pedro Dietrich, and that he saw the "Heraldo Español" in that city, that the caricature did not resemble said priest because the latter did not have a beard, nor did he wear glasses; that it rather ap-

peared like Attorney Hermino Díaz Navarro, even to the ring
which he wears in the carricature, and that in the action prose-
cuted in the Mayagüez court against Father Pedro the only
judge presiding at the trial had not been challenged. Her-
minio Díaz Navarro, a witness for the defendant, testified
that when he saw the caricature for the first time he felt hurt,
and being put out he asked Balbás why he had caricatured
him in that form and that said gentleman replied that the
caricature did not refer to him but symbolized a matter in
Mayagüez in which a Catholic priest was involved.

The same newspaper which contains the caricature and
the doggerel gives an account of the incident of the challenge
of one of the Justices of this Supreme Court by one of the
attorneys for the defendant, Díaz Navarro, in the disbarment
proceedings against him, which challenge had been overruled.

The *fiscal* made an oral argument in support of his com-
plaint and the defense moved for acquittal of the defendant
on the ground that it had not been his intention to allude to
the Supreme Court.

The right of a journalist to censure public and official acts
of any officer or functionary is indisputable, as well as his
right to criticise and discuss, in a reasonable manner, the de-
cisions of any court of justice, however high it may be, after
the termination of the action or proceedings, but without vio-
lating, by the words and terms used and employed in the
newspaper, the penal laws to which he is subject, like any
other citizen having free and sound mental faculties.

The evidence shows that the doggerel and the caricature
refer to the disbarment proceedings pending at that time
before this court against Herminio Díaz Navarro, and that the
latter, and no other, is the man who appears hanged in said
caricature.

If that picture signifies anything it must be that this court
had prejudged the question before all the evidence had been
heard and the proceedings terminated, as it had condemned
the defendant, Díaz Navarro, *in pectore* without further pro-

ceedings, this affirmation of the newspaper being corroborated by the doggerel, a dispassionate perusal of which reveals the fact that such was the intention of the journalist manifested by the circumstances related with the crime and a sound judgment and discretion therein.

The doggerel as well as the caricature together constitute an offense amounting to a contempt of this Supreme Court, because they involve defamatory, malicious and incorrect imputations published in a graphic form in a newspaper which was put into circulation, tending thereby to discredit this court unjustly.

The gravity of the act committed is evident because it tends to engender lack of confidence among the people, leading them to believe that the court which was trying Attorney Herminio Díaz Navarro at the time was not impartial and just.

In view of the third paragraph and second section of the act defining the offense of contempt of court and providing for the punishment thereof, approved March 1, 1902, Vicente Ealbás Capó is found guilty of the crime of contempt and is, consequently, sentenced to pay a fine of $200, which he will pay within three days, and in default of payment, to be imprisoned in the district jail of San Juan for 30 days, and to pay the costs.

*Accordingly decided.*

Chief Justice Hernández and Justices Figueras, MacLeary, Wolf and del Toro concurred.